IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

TERRANCE K. ALDEN
        PLAINTIFF

   versus

JOESPH V. SMITH, WARDEN
  and
CATHY EY, COUNSELOR
        DEFENDANTS

3:CV05-1735

CASE NO.

COMPLAINT

FILED
WILLIAMSPORT, PA

AUG 24 2005

MARY E. D'ANDREA, CLERK
PER _____
DEPUTY CLERK

### A. PARTIES

1. Plaintiff, Terrance K. Alden, is a U.S. citizen. Currently detained at U.S.P. Lewisburg, P.O. Box 1000, Lewisburg, PA 17837.

2. Defendants Joesph V. Smith, Warden, and Cathy Ey, Counselor, in their official capacities at U.S.P. Lewisburg. May be served by delivering a copy of the summons and complaint to the U.S. Attorney for the Middle District of Pennsylvania. [Fed.R.Civ. P.4(i)(1)].

3. Plaintiff requests a jury trial on his claim of deliberate indifference. [Fed.T.Civ.P.38(a)]

### B. JURISDICTION

4. The court has original and supplemental jurisdiction over this suit pursuant to 28 U.S.C. § 1331, § 1346(b)(1) and § 1367. The plaintiff further advances the Federal Tort Claims Act pursuant to 28 U.S.C. §§ 2671-80.

USA001202

This action is for money damages and declaratory relief for personal injury as a proximate cause of the negligent acts / or omissions of employees of the U.S. Government. As well as the acts of reckless disregard to plaintiff's safety and the deliberate indifference to the plaintiff's serious medical needs.

## C. STANDING

5. Plaintiff has suffered injuries and continues to suffer in fact by the negligent acts of the defendants. Moreover, Smith and Ey the defendants, have acted and continue to act with reckless disregard of the plaintiff's safety as well as with deliberate indifference to the plaintiff's serious medical needs. These acts by defendants are in violation of the Eighth Amendment and the guarantees of the Due Process Clause of the Fourteenth Amendment.

6. The Federal Tort Claims Act (FTCA), <u>28 U.S.C. § 2671-80</u> and <u>Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 US 388 (1971), provides the plaintiff with a private right of action.

## D. CONDITIONS PRECEDENT

7. Plaintiff timely presented these claims in writng to the Chief Executive Officer of U.S.P. Lewisburg, the Northeast Regional Counsel, in PA, and the General Counsel, in Washington D.C..
The suit is filed within six months of the agency's final written notice. <u>28 U.S.C. § 2675(a)</u>.
[See 2(a) profile claims advanced to B.O.P.]
[Note 2(b) and 2(c) profile claims advanced to B.O.P.]

USA001203

Counselor/housing assignment officer, Cathy Ey, for Unit 1, on or about (12/13/04), acting under the color of law in her official capacity arbitrarily disregarded the medically restricted housing order issued to Terrance K. Alden #02595-135. The order was issued on (12/22/99), a result the treating physician's diagnosis of a recurrent serious medical need. Counselor Ey, has deliberately and intentionally interfered with prescribed medical treatment. The prisoner Alden, is receiving no treatment for a chronic serious medical need, while serving a life sentence, the immediate sustained sleep deprivation, and recurrent physical pain and injury resultant of the diagnosed medical need are evidence of irreparable harm to prisoner Alden, in violation of the 8th Amendment. Counselor Ey, has intentionally deprived prisoner Alden, of a property interest protected by the Due Process Clause of the 14th Amendment. Furthermore, with random selection to fill bed space, Ey has breached the duty requirement of preserving the safety of all prisoners in her charge. NOTICE to Chief Executive Officer of U.S.P. Lewisburg, **corrective inaction, amounts to deliberate indifference to or the tacit authorization of violative practices by staff.** Moreover, double celling at minus sixty square feet in a cell is contrary to the standards required by C.F.R. and A.C.A.

2(a)

USA001204

On or about Feb./Mar. 2005, Joseph V. Smith, Warden, acted willfully and intentionally in his disregard of provisions of 15 USC sec: 2688(b) and 2689. That is by authorizing renovations/alterations which were likely to disturb deteriorating lead-based paint surfaces in the cells of B-Cell block.

The specific acts inclusive of hammer/drilling ½" holes into cell walls layered in deteriorating lead-based paint. Then hammer anchors into the same to affix desks to walls and floor. The result was an immediate lead-based paint hazard, consistent with the terms of section 2681(10) of 15 USC.

The defendant Smith, was deliberately indifferent to the unreasonable risk of serious damage to future health of the Plaintiff or others within the cellblock. Moreover, the prisoners living in B-cellblock were personally responsible for the clean-up of the lead-based paint dust, thus absent the issue of any type of safety equipment (suits/masks etc).

The concomitant violations of 15 USC with other acts of alteration/reduction of cell floor space by installations of bolt down beds, bolt down lockers on or about Aug./Oct. 2004, resulted in the intentional violation of plaintiff T.K. Alden's, 8th Amendment rights.

Profile claims advanced on [BP# 38 3048]

2(b)

USA001205

Original Window



|←— 19.5' —→|

44"

858 Sq. in. opening

Regarding the cell size being inadequate for double celling, at minus 60 sq. ft.. It is conceded the cells were designed and built prior to establishment of A.C.A. Standard 2-4129 (1989). The original design of the single cell as built relied upon a 19½" x 44" casement window with ability to fully open thus providing with bars included **858 sq. in.** of air flow into cell to facilitate 6 changes of air per day.

In 1996-97 the windows in cellhouses B-C-D, were altered with BOP sanction. A steel plate 1/8" thick covers the windows. The plate has 63 holes across and 162 holes down, which comes to 10,206 holes in plate. Each hole measures 3/16" the radius of a 3/16" hole is 3/32"
( $3/32^2$ = 9/1024 x pi = .027611654 sq. in. per hole) x 10,206 = **281.8 sq. in.** window openning post alterations.
This represensts more that a 66% reduction in air flow thru window openning by volume.

Cellhouses B-C-D-A, have never had AIRHANDLERS installed to aid cell ventilation, which now is effectively non-existant with the cell doors closed and two persons in the cell the lack of air becomes obvious in minutes. The cells are all less than 60 sq. ft., to start and end up with 12 sq. ft. of floor space for two men to share. The inadequate cell size and total lack of ventilation contribute to the breeding and spreading of disease. Which are violations of 8th Amendment guarantees.

\* While A cellhouse does not have window covers yet the second bunks were not installed until 1997, which contradicts the express standard set by A.C.A. 2-4129, in 1989.

A secondary effect of the 1997 ALTERATIONS of cell windows/ventilation in D-C-B houses, is that the steel plate is anchored to window frames covered by **deteriorated lead base paint** as defined by 42 U.S.C. § 4851b(5). Weekly security procedures in each cellhouse requires a hammer to be employed by a guard to impact the anchor areas of the steel plate. The immediate result is **lead contaminated dust** pervading the cells due to lack of working ventilation. Any form of testing x-ray fluorescence analyzer, or atomic absorption spectroscopy or any comparable sampling technique would confirm the prolonged presence of the dust.



280 sq. in. Opening

1997 Window Modification

Profile of claims advanced on [BP# 383048]

2(c)

USA001206

## E. FACTS

8. The plaintiff was released from segregation unit, post transfer to U.S.P. Lewisburg, in mid-September of 1999.

9. The plaintiff was housed with a cellmate in B-cellhouse the person of Barry Antell.

10. Sometime in late September of 99, the plaintiff sought medical attention for what seemed to have been at least two heart-attacks suffered in the early morning hours.

11. In the course of the next sixty days the plaintiff suffered numerous recurrent attacks, which all seemed to be heart related, however, medical staff suggested that the disorder should be treated as panic attack.

12. The plaintiff then began to see a staff psychologist, as well as a psychiatrist via (tela-med), the plaintiff was issued at least three prescriptions for psychoactive drugs, as well as medications to induce sleep.

13. The plaintiff despite all the combined efforts at treatment suffered at least a dozen episodes of panic attacks, as well as the intense physical pain in the aftermath of each attack.

14. The plaintiff continued to suffer from sleep deprivation despite the sleep medications, the plaintiff was not able to get more than ten minutes of continous sleep without waking during that period .

15. The plaintiff in December of 1999, was treated by the Clinical Director, Anthony Bussanich, M.D., for the panic attacks.

USA001207

16. On December 22, 2004, Dr Bussanich, **diagnosed** the recurrent panic attacks and sleep deprivation, as post-traumatic stress disorder. The physician issued an order for **medically restricted housing,**[single cell] in order to treat the plaintiff's **serious medical needs.**

17. The plaintiff submits that the prescribed treatment method of **restricted housing**, had been completely effective for five years in the elimination of symptoms of the chronic condition. This does include sleep deprivation and the severe physical pain which arrives post-panic attack.

18. The defendants Smith and Ey, in their official capacities under the color of law have acted **intentionally** and **deliberately** to deprive the plaintiff of **previously prescribed medical treatment,** the [restricted housing order]. The plaintiff further submits that in accordance with the facts of this case the **restricted housing** is vested by the Eighth Amendment and thus a **property interest,** which the defendants Smith and Ey, have **interfered** with in **conscious disregard** of the plaintiff's substantive due process rights. Moreover, as a proximate cause of the defendants intentional violations of the plaintiff's Eighth Amendment and due process rights, the plaintiff has suffered immediate severe physical injuries to his person. The extent of these injuries is yet undetermined however, **invasive** surgery will be required to repair the injuries. The plaintiff has sufferd the pain attendant to these injuries and continues to suffer the pain to date.

USA001208

### F. Count 1 Federal Tort Claims Act

19. The defendant Ey, by reckless acts and deliberate omissions failed the duty of care to all concerned parties (potential cellmates), as well as the plaintiff. The health and safety of all concerned parties was jeopardized with the reckless disregard of the plaintiff's medically restricted housing order. Moreover, defendant Ey's decision was deliberate without notice or hearing related to intended action by the defendant.

### G. Count 2 Eighth Amendment Violations

20. Defendants Ey and Smith have acted intentionally with deliberate indifference towards the plaintiff's serious medical need.

### H. Damages

21. As a proximate cause of the defendants negligence and deliberate indifference, the plaintiff has suffered the following injuries: (a) The plaintiff has suffered and continues to suffer the recurrent pain and mental anguish attendant to panic attacks. Moreover, the physical pain suffered by the plaintiff post/panic attack is characterized by severe muscle spasms deep back and chest inclusive of the heart. (b). The plaintiff has suffered and continues to suffer the torture of sleep deprivation, the plaintiff has not had a sustained sleep-state for longer than ten consecutive minutes since December 13, 2004, [**with exception of 1/5/05 thru 1/9/05**], to date 3/28/05, the plaintiff has suffered this for more than sixty consecutive days.

5

USA001209

(c) The plaintiff has suffered the immediate pain and continues to suffer the acute abdominal pain associated with a tear in the tissues of the abdominal wall.

(d) The plaintiff is further subjected to the anxiety and depression attendant to concerns over any unintentional violent injury caused by the plaintiff when in the grip of panic attack, upon the person sharing the cell. The plaintiff could be exposed to civil liability or criminal liability, when the B.O.P. attempts to deny any claims of civil liability to the victim or his estate.

## I. PRAYER

22. For these reasons plaintiff asks for the following:

A. Actual damages of 10,000 for the plaintiff's claim of negligence.

B. Actual damages of 10,000 for the plaintiff's claim of deliberate indifference.

C. Punitive damages in the amount of 10,000 for the plaintiff's claim of deliberate indifference.

D. **INJUNCTIVE relief.**

E. Costs of suit

F. All other relief that the Court deems appropriate.

DATED: 3/28/05 ,2005

Respectfully submitted,

*Terrance K. Alden*
Terrance K. Alden

6

CERTIFICATION

I, *Terrance K. Alden*, certify and swear that the foregoing statements made by me are true and correct to the best of my knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to the penalty for perjury under 28 U.S.C. § 1746 .

I, *Terrance K. Alden*, declare and certify under the penalty of perjury [ 28 U.S.C. §1746 ], that the foregoing is true and correct.  Executed On: 8/21/05

USA001211

# CERTIFICATE OF SERVICE

I, Terrance K. Alden, hereby certify that I have served a true and correct copy of the foregoing:

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, <u>Houston vs. Lack</u>, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this 8/21 day of /05,

Respectfully Submitted,

Terrance K. Alden
Terrance K. Alden

REG. NO. 02595-135

USA001212