UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF INDIANA

FILED
09/06/2022
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

TERRANCE ALDEN,
    Plaintiff,

v.                CASE NO. 2:20-CV-00479-JPH-DLP

FEDERAL BUREAU OF PRISONS,
    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

COMES NOW, the Plaintiff, Terrance Alden ("Alden"), moving in the action before this Honorable Court, and Office of U.S. Attorney, in Pro Se.

**Interrogatory No. 1:** David Lukens, M.D. Staff Physician
William E. Wilson, M.D. Clinical Director, USP Terre Haute

**Interrogatory 2A:** In the matter of Dr. Lukens, on or about 8/15/17, Alden was taken to Dr. Lukens office for consult. Alden provided answers to all medical questions presented by Dr. Lukens, to the best of Alden's memory and recall.

Alden did take the consult as the opportunity to address all the facts related to his own problem. Alden disclosed the facts related to recurring violent panic attacks if double celled, when Alden sleep. Appended to this information Alden clarified the panic attacks were triggered by Post Traumatic Stress Disorder, which had been diagnosed by a Physician, and record would be within Alden's medical files, held in medical records office.

Alden described his efforts to prevent any further violent panic episodes, [and attack on cell-mates], which had so far eliminated the convulsive seizures, remaining sitting-up thru the nights and remaining awake seemed viable.

Dr Lukens, suggested that the problem depicted was a matter for psychology to address the consult was terminated.

It should be stated due to the Nursing Staff's efforts, Alden was evaluated on 4/12/17, for radiographic evidence of acute cardio plumonary process. Thereafter, on 9/18/17, an Echo cardiogram was performed on Alden, to make certain the heart was functioning without fluid build-up, stemming from dependent edema (gravity influenced) in the lower legs, secondary to sitting-up right thru the nights. The Nursing staff had regularly treated recurrent stasis dermatitis with subsequent infections Alden was prone to.

On 6/15/18, Dr Lukens, again entered Alden on the call list, Alden was moved to Dr Lukens office to recount severe shoulder pain right shoulder group, caused by impact injury sustained on 5/11/18.

When Alden was detailing the facts of the night of the injury, Dr. Lukens, immediately said "time out" to preclude any information transfer related to protracted sleep deprivation causing the black-out and subsequent fall into concrete abutement. Beyond that that actual problem of PTSD and the panic attacks which result in uncontrolled violence until Alden comes out of fugue state.

2

In response to what Dr. Lukens, individually should have done after Aiden presented his actual problem. Dr. Lukens had Aiden's medical files available for review of PTSD diagnosis. Dr Lukens consult with immediate superior, that being Dr. Wilson.

Then review records maintained by staff of treating Nurses/PA's the notations identifying sitting-upright through the night to avoid sleeping with cell-partner present, span 31 months at least. Notably the recurrent case of Stasis Dermatitis with secondary skin infections requiring antibiotic treatments, should have warranted some response.

Significantly some 50 days, after Aiden's first consult with Dr Lukens, Aiden blacked-out while standing. Aiden sustained peri-prosthetic proximal humerus fracture, which while the papers do not identify Aiden blacked-out while standing at the door.

Approximately 171 days later, Aiden again blacks-out while seated severely impacts right shoulder on concrete abutement. Acute denervation in SupraSpinatus (crushed nerve) determined by "EMG" 6/27/19 by Douglas Paine, M.D.

On 6/15/18, approximately 1 month after the impact injury when Aiden, attempted to request help for the active disability which has afflicted his life for more than 45 years, Dr Lukens, literally got frantic to stop Aiden from speaking about his impairment.

A medical doctor's duty and oath established to address "Physical injury" even if the root cause is related to PostTraumatic Stress Disorder, Aiden was entitled to treatment for the condition by Medical doctors.

3

Interrogatory 2B: In the matter of William E. Wilson, M.D. and Clinical Director, at U.S.P. Terre Haute, Alden respectfully posits that Dr. Wilson, had the ultimate responsibility for clinical care of all prisoners. Further his position required evaluation of patient care, and he maintained medical records.

Alden respectfully offers that as of 7/10/17, Dr. Wilson, was presented with some specific information correlated to Alden's diagnosed impairment, and his signature was required by nurse's request on that medical record.

Roughly 94 days later on 10/14/17, by reason of imposed sleep deprivation, Alden blacked-out impacting on right side resulting in fracture of right humerus. On that Monday the 16th once taken into triage area, the nursing staff made certain Alden was in route to outside hospital in approximately 30 minutes.

Alden had no actual opportunity to speak with Dr. Wilson, during that initial encounter, he signed order for transfer to outside hospital, he was in and out of the triage area quickly asking and answering questions of the nurses.

Alden was called-out to see Dr. Wilson, on 7/19/18, according to Dr. Wilson's record, it was in regard to edema of ankle follow-ups, however that was not correct, the 5/11/18, impact injury had not in any fashion healed or ceased to deliver serious shock-like pain right through the armpit. Dr. Wilson had no answer for treatment to eliminate the pain.

Alden directly pursued request for single cell via

4

Medical authorization, the physical injuries which Alden had sustained to that point were serious, the edema was also a direct result of double celling.

Dr Wilson, said he would consider it even discuss it with his boss - the Warden.

Alden respectfully submits as the medical records initially presented depict, Dr Wilson, never reviewed records for single cell orders. Inasmuch as on the record he does identify a review of Alden's MDS sheets no cell orders for six years back.

Alden for this record states the only medical single cell order Alden ever received was at U.S.P. Lewisburg, in 1999 thru 2004, Dec. 18th... All single cell orders came from Warden's order, how each was put in place Alden has no idea, except cell house bedbook logs verify the second bunk empty for years.

It should be stated Alden, clearly explained the history of uncontrolled violent panic attacks, while in a fugue state, there is no acceptable I am sorry, once you have actually battered and strangled a person whether you're half asleep or not.

Thus Alden has no other option but to stay awake thru the nights when double celled and the prolonged sleep deprivation feels endless.

Dr. Wilson, had the authority to address the rights of a patient whom is actively disabled by reason of the diagnosed condition of Post Traumatic Stress Disorder, which was determined in Dec. 1999, by the Clinical Director, of U.S.P. Lewisburg, Anthony Bussanich, M.D.

5

Alden respectfully states that he did in fact request a single cell order from Dr Blessinger, at U.S.P. Terre Haute, while she acknowledged her willingness to move the recommendation forward it would be the Chief Psychologist's decision.

Request Denied

Alden respectfully offers the refusal by the Chief Psychologist, may have influenced Dr Wilson, for some reason PTSD is the domain of the Psychology dept.

Interrogatory 3: Alden endured in excess of 31 months of sleep deprivation, for the failure of these two doctors to address this patient's subjective complaint. On 10/14/19, the very painful broken arm materialized subsequent to black-out, which was a result of sleep deprivation.

Allen to date suffers the same level of "Electric shock" type pain through right arm pit, aftermath of impact injury, again by black-out due to protracted sleep deprivation, which both doctors had been made aware of as persistant problem.

These are impact injuries Alden has addressed in the filings together with the effects of protracted sleep deprivation.

Noteworthy the loss of a right hand closed grip to say carry a Suitcase, a matter of radiculopathy, that would be nerve damage at some point between right hand and right shoulder group.

6

Interrogatory 4: Aiden did make a request for single cell order from Dr. Jacquelie Blessinger, who was a treatment consultant. As previously stated Dr. Blessinger, stated her support for placement of cell order but the decision was solely that of department's Chief Psychologist – denied.

Aiden requested the help of Dr. Lukens, during initial consult regarding need for single cell – Refused and referred to Psychology, which Aiden had already taken steps.

Aiden did request the help of Dr. Wilson, on two occasions of consults, and later on the E-mail record twice.

Interrogatory 5: No response No medical condition

Interrogatory 6: So far as I am aware no specific medical condition Effects my blood pressure: However Stress, Anxiety, depression, flashbacks, excessive startle response, violent night mares, run after long bouts with protracted sleep deprivation. May have some effect.

Interrogatory 7: In Dec of 1999, at USP Lewisburg, the Clinical Director, Dr. Anthony Bussanich, made diagnosis, after a number of violent panic attacks in the course of a (3) month period. Further, I addressed the situation as best as I could, Extreme Anxiety unrelenting, unchecked startle response, depression overwhelming, violent night mares, not able to sleep with anyone present, lack of memory of event, yet recurrent flashbacks to attack.

7

Interrogatory 8: Alden respectfully declares "one must reflect on a time that absolute exhaustion was overcoming, the will to remain awake, consider that you win the battle that few minutes ends and you are asleep. Well when the black-outs occur it like a switch was thrown and you're on the floor. So yes the protracted sleep deprivation had some direct effect on black-outs and the injuries Alden sustained.

Interrogatory 9: Alden respectfully attests that Dr. Anthony Bussanich, issued medical order for single cell in Dec. 1999, that lasted until Dec. 13th 2004, the Bureau of Prisons, made a determination regarding single cell orders, called for termination Bureau wide.

Interrogatory 10: No other case pending

I, Terrance Alden, do hereby certify and attest: that all of the foregoing statements made by me are true and correct to the best of my personal knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false I am subject to the penalty for perjury pursuant to (28 USC § 1746).

DATE: 8/14/22        BY: _Terrance Alden_
                         Terrance Alden

8